Texas & Pacific Railway Company et al v. W. R. Felker.

Decided December 7, 1906.

1.—Delivery of Cattle—Duty to Provide Suitable Pens.

It is the duty of a railroad company transporting cattle to provide suitable pens for the delivery of such freight, whether the delivery is made to a consignee or to a connecting carrier, and for a failure to do so, in case of consequent injury, it is liable to the owner.   It can not shift the liability by showing that the defective pens used were owned and provided by another company, a stranger to the contract of shipment.

2.—Telephone Conversation—Hearsay.

The testimony of a witness who was present during a conversation between other parties over the telephone, as to what the party at the other end of the line said was hearsay, the knowledge of the witness having been obtained only from what was repeated or told him by the party using the telephone in his presence.

3.—Shipping Contract—Pleading—Evidence.

In a suit for damages to a shipment of cattle, a general allegation in the

answer of defendant that the contract of shipment was reduced to writing would not warrant the admission in evidence of that part of the written contract stating that all verbal contracts in reference to the shipment were merged in the written instrument.

Appeal from the District Court of Mitchell County. Tried below before Hon. James L. Shepherd.

*Wagstaff & Davidson,* for appellants.

*Ed J. Hamner,* for appellee.

SPEER, Associate Justice.—This is an action for damages growing out of a shipment of cattle by W. R. Felker over the lines of the Texas & Pacific Railway Company, St. Louis, San Francisco & Texas Railway Company and the St. Louis & San Francisco Railway Company. The case was before this court on a former appeal and will be found reported in 14 Texas Ct. Rep., 308. Many of the questions raised on the present appeal were disposed of in that opinion and will not be again discussed. Upon the last trial there was judgment against each of the defendant roads and they have appealed.

The special charge to the effect that if the jury believed that the cattle involved were poor and weak and that the injuries, in whole or in part, resulted proximately from that condition of the cattle, to find for appellants, as to such injuries, was properly refused because the court's main charge sufficiently presented this issue in the following language: "Again, if you believe from the evidence in this case that the cattle of plaintiff were shipped over the lines of defendant carriers, and that they died or were injured from no acts of the defendants, or either of them, or that they did not so die, or were not so injured by delays, unloading in crowded pens at Fort Worth, and delays while in possession of the defendants, or in transportation, or if you find the same died or were injured, but such deaths, if any, and such injuries, if any, were the result of the inherent weakness of the cattle, or that their condition was such that they were not able to make such a journey without such injuries or deaths, then you will find for the defendants."

The charge last quoted is itself the subject of criticism upon two grounds; first, that it assumes that if the cattle were injured by delays and unloading in crowded pens at Fort Worth, appellants were guilty of negligence as a matter of law and that appellee should recover; and second, that it imposed a higher degree of care on appellants than required by law by instructing the jury that if the condition of the cattle was such that they were not able to make such a journey without such injuries or deaths, the jury would find for the appellants. The record indicates that when appellee shipped his cattle from Iatan to Fort Worth over the line of appellant Texas & Pacific Railway Company, it was understood between the parties that the cattle would be further transported to a point in the Indian Territory, but appellee had not then determined the connecting line over which the transportation would be further made. The contract with the Texas & Pacific Railway Company contained the usual clause limiting its liability to its own line, and providing for the delivery to the next connecting carrier. Upon

arrival at Fort Worth appellee through his agent, who accompanied the cattle, determined to ship them out over the lines of the other appellants. The Texas & Pacific Railway Company must have understood that the cattle were intended for further transportation, for it delivered them at the Union Stock Yards in North Fort Worth, where deliveries to the other appellants as connecting carriers were usually made. It was the duty of appellant Texas & Pacific Railway Company to provide suitable pens for the delivery of such freight, whether the delivery is made to the owner or to a connecting carrier, and for its failure in this respect it would be liable for all damages directly attributable thereto. It can not shift liability to the stock yards company by showing that the delivery was made in pens provided by that company. The stock yards company is a stranger to appellee and his contract with appellant. The second criticism of the charge is not tenable, seeing that it presents but another contingency upon which the jury ought obviously to find for the appellants as they are told, but does not in any just sense impose the absolute duty upon appellants to safely transport the cattle if they were able to make such a journey.

The testimony of the witness Thompson, who accompanied the cattle, to the effect that he did not authorize the Texas & Pacific Railway Company to deliver the cattle at Union Stock Yards and unload them in the pens there, was properly admitted, since it tended to show that the delivery there was at a point of appellant's own selection.

The facts recited were sufficient to authorize the court to instruct the jury that it was the duty of the Texas & Pacific Railway Company to transport the cattle to Fort Worth and there to deliver them to the connecting carrier, the other appellants.

We think the court erred, however, in permitting the witness Thompson to testify concerning a conversation had between Mr. Brooks and Mr. Pennington, in which the witness detailed what Mr. Brooks told him that Mr. Pennington said. Mr. Brooks, it appears, called up Mr. Pennington, the general live stock agent of the two appellants known as the Frisco System, and in the presence of witness stated, "I have an assignment of cattle here billed out over our road. Can you handle them?" And then said to witness that Mr. Pennington's reply was, "I have all sorts of cars," and "I will take charge of them and take them out right away." This was duly excepted to as being hearsay, and should have been excluded. Counsel for appellee promised to show such connection as to make it admissible, but we think he failed to do so. His effort was to show what he terms a "ratification," by proving subsequent conversations between the witness Thompson and Pennington, in which the former said to the latter, "My cattle are here yet;" and the latter replied, "Mr. Brooks mentioned them to me; ain't they gone yet? I will have them take them out right away." The conversation over the phone was the first one had with Pennington and bore upon the question of when the appellants, the St. Louis & San Francisco Railway Companies, received the cattle and became liable for their care. With the conversation objected to before the jury, they might properly find that the cattle were received by these companies at a much earlier hour in the day than the other testimony would indicate. For this reason we can not say that the admission of the evidence was harmless.

We are inclined to hold that the court committed no error in refusing to permit the appellants, the St. Louis & San Francisco Railway Companies, to offer in evidence that part of their written contract stating that all verbal contracts in reference to the shipment were merged into the written instrument, upon appellee's objection that such part was not pleaded. A general allegation by appellants that the contract of shipment was reduced to writing would hardly put appellee upon notice of such a stipulation.

For the error discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*